**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| B.J., | : | Civil Action No. 22-66 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff B.J. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's applications for disability insurance benefits and supplemental security income in December 2015 and January 2016, respectively, alleging disability starting on June 1, 2015. A hearing was held before ALJ Andrea Addison (the "ALJ") on May 4, 2020, and the ALJ issued an unfavorable decision on November 25, 2020. Plaintiff sought review of the unfavorable decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final

1

decision, and Plaintiff filed this appeal.

In the decision of November 25, 2020, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings. At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform the full range of work at all exertional levels, with certain nonexertional limitations. At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined, based on the testimony of a vocational expert, that there are jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and residual functional capacity. The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

Plaintiff makes four arguments on appeal: 1) the ALJ failed in her duty to develop the record; 2) at step three, the ALJ's determination is not supported by substantial evidence; 3) at step four, the residual functional capacity ("RFC") determination is not supported by substantial evidence; and 4) at step five, the ALJ's determination that Plaintiff can perform certain jobs is not supported by substantial evidence.

Plaintiff's case on appeal suffers from two principal defects: 1) its failure to deal with the issue of the burden of proof at the first four steps of the sequential evaluation process; and 2) its failure to deal with the harmless error doctrine. As to the burden of proof, Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

As to the harmless error doctrine, the Supreme Court explained its operation in a similar

procedural context in <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination.  The Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  <u>Id.</u>  In such a case, "the claimant has the 'burden' of showing that an error was harmful."  <u>Id.</u> at 410.

Plaintiff thus bears the burden, on appeal, of showing not merely that the Commissioner erred, but also that the error was harmful.  At the first four steps, this requires that Plaintiff also show that, but for the error, she might have proven her disability.  In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

Plaintiff first argues that the ALJ failed in her duty to develop the record.  Plaintiff also points out that the claimant was not represented by counsel at the hearing before the ALJ:

> Mr. Jurkowski was unrepresented at the hearing in this matter. He had the option of postponing the hearing to obtain counsel, but chose to go ahead without counsel. To be sure, that is his right.

(Pl.'s Br. at 12.)  This is a crucial, undisputed, fundamental fact: at the hearing before the ALJ, Plaintiff had the option to delay the hearing and seek the assistance of counsel, but Plaintiff made a choice and exercised his right to proceed without counsel.  Plaintiff argues that the law imposes on the ALJ a duty toward the *pro se* claimant at the hearing.  The Court notes that none of the cases cited in support of Plaintiff's claim that the ALJ has such a duty is controlling authority in the Third Circuit.  (<u>See</u> Pl.'s Br. at 13.)  Nonetheless, the Third Circuit does impose such a duty:

> An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.

<u>Reefer v. Barnhart</u>, 326 F.3d 376, 380 (3d Cir. 2003).  The key question for the Court is: what is

3

the nature and scope of the ALJ's duty to a *pro se* claimant? Plaintiff's brief does not address this key question.

At a few points in the brief, Plaintiff seems to suggest that the ALJ should have acted so as to compensate for the absence of counsel at the hearing. For example, regarding the examination of the vocational expert at the hearing, Plaintiff argues:

> [T]he question was asked to assume that the individual was limited to such "superficial" and "occasional" interaction and the vocational witness provided the jobs listed above. This was not challenged by Mr. Jurkowski and it was not challenged by the Administrative Law Judge. Neither is surprising. Mr. Jurkowski is not an attorney or certified advocate. The above analysis is simply beyond his ability. Yes, it is his fault that he was not represented, but that does not mean that the testimony should not have been challenged, particularly by a very experienced Administrative Law Judge that has heard such testimony probably thousands of times. As discussed above, the Administrative Law Judge has a responsibility to wear three hats. In simply accepting the testimony of a vocational witness, without challenge, when common sense would indicate that a person who is only capable of "shallow and cursory" interaction with coworkers and even more for no more interaction with supervisors for than a third of the day with supervisors, would likely not be able to sustain any real world work.

(Pl.'s Br. at 26.) Thus, Plaintiff appears to argue that there was a "common sense" challenge to the testimony of the vocational expert that Plaintiff did not make, and, because he had exercised his right to proceed without counsel, no attorney was present to make it for him. The suggestion seems to be that the ALJ should have filled in the gap. This, however, asks the Court to require an ALJ to act as counsel for a claimant who has chosen to proceed without counsel, with the hint that perhaps the failure of the ALJ to act as counsel should be reversible error. Plaintiff has provided no legal foundation for this position, and, in the absence of controlling authority in support, the Court declines to reverse an ALJ's decision on the basis of the accusation that she failed to act as counsel to Plaintiff.

Plaintiff contends that the ALJ breached this duty during the examination of the

4

vocational expert, offering two arguments.  First, at step four, the ALJ found that the "claimant is limited to occasional and superficial interaction with the general public and coworkers, and to occasional interaction with supervisors."  (Tr. 38.)  This limitation was included in the hypothetical presented to the vocational expert, who testified that such a person could perform jobs such as mail clerk, cleaner, or router.  Plaintiff argues that it is "common sense" that a person with the "occasional and superficial interaction" limitation would be incapable of performing those jobs.  (Pl.'s Br. at 26.)  Plaintiff contends that the ALJ should have "challenged" the expert about this.

Second, Plaintiff makes a similar argument in regard to the RFC limitation, "the claimant can never perform production pace work."  (Tr. 38.)  Plaintiff's brief contends that the three jobs require work at "production pace," and that the ALJ should have been concerned about a potential conflict between the limitation and the three jobs, but wasn't.

In short, at step five, the ALJ presented a hypothetical to the vocational expert with two particular nonexertional limitations, the expert testified as to jobs such a person could do, and the ALJ credited the expert's unchallenged testimony.  Plaintiff argues that the ALJ breached her duty to a *pro se* plaintiff by not skeptically challenging the expert's testimony.  Plaintiff has failed to persuade this Court that the ALJ breached her duty to a *pro se* plaintiff under Third Circuit law by not skeptically cross-examining the expert on these points.  As already discussed, Plaintiff seeks to impose on the ALJ a duty to function as counsel for a claimant who has waived his right to counsel.[1]

---

[1] Plaintiff's brief does not expressly concede that Plaintiff waived his right to counsel.  It does acknowledge that Plaintiff was given the option to adjourn the hearing and find counsel, and Plaintiff chose to proceed.  Plaintiff has raised no challenge to inferences that he made a

Plaintiff contends that the ALJ breached her duty to a *pro se* plaintiff by failing to engage in challenging cross-examination of the vocational expert, but has cited no controlling legal authority in support. As already stated, Third Circuit law does hold that the ALJ has a duty to a *pro se* "claimant to help him or her develop the administrative record." Reefer, 326 F.3d at 380. The problem for Plaintiff is that Plaintiff has not offered the Court any controlling authority that defines that duty and gives its scope. Does the "duty to develop the administrative record" require that an ALJ function as counsel for the *pro se* claimant? Plaintiff has offered no Third Circuit law that states that the ALJ has such an obligation. While Reefer does state that the ALJ has a duty to inquire into the relevant facts, Plaintiff has not cited cases which define the scope of that duty. The key question in this case is whether this duty requires an ALJ to engage in cross-examination that is ordinarily the function of counsel.[2] Plaintiff has not provided this Court with a basis in law to conclude that the ALJ's duty of inquiry includes a duty to question the expert in ways that are not readily distinguishable from the cross-examination that could be provided by counsel.

Plaintiff also argues that, at the hearing, the ALJ noted that there appeared to be ongoing mental health treatment with Dr. Stein, but that the record contained only a single note from Dr. Stein. Plaintiff hints, but does not directly assert, that the ALJ had a legal duty to the *pro se* claimant to obtain those records. As already discussed, Plaintiff has cited no relevant Third Circuit law that defines the scope of the ALJ's duty to a *pro se* claimant and this Court has no

---

knowing and voluntary waiver of his right to counsel.

[2] In Reefer, the Third Circuit discussed an ALJ's duty to develop the record for a *pro se* plaintiff. 326 F.3d at 380-81. In that case, the discussion focused on what medical records the ALJ should have obtained, and there is nothing in the discussion that suggests a duty to engage in skeptical cross-examination of witnesses.

6

basis to conclude that the ALJ breached a legal duty to Plaintiff by not obtaining treatment records from Dr. Stein.  Moreover, Plaintiff does not argue that, but for the absence of further records from Dr. Stein, he would have proven disability.

Plaintiff next argues that the ALJ's step three determination that Plaintiff did not meet the requirements of any listed impairment is not supported by substantial evidence.  Plaintiff specifically challenges the ALJ's determination, pursuant to Listing § 12.00(F)(2), that none of Plaintiff's areas of mental functioning is impaired at the marked or extreme level.  Plaintiff's brief, however, does not go beyond characterizing the ALJ's discussion of the evidence as "vague" and hard to understand.  (Pl.'s Br. at 17.)  Plaintiff here has not carried his burden under Shinseki to demonstrate both that the ALJ erred and that the error was harmful.  Plaintiff bears the burden of proof of disability at step three and, to prevail on appeal, Plaintiff must show prejudice by showing that the evidence of record supports an inference that the claimant met the requirements of a specific Listing.  Plaintiff has not done so.  Plaintiff has not pointed to evidence that demonstrates that, for a specific mental health Listing, the limitation of an area of Plaintiff's mental functioning is at the marked or extreme level.  Plaintiff does no more than assert that the ALJ did not explain the step three decision well enough.  The Court therefore cannot conclude that, at step three, any errors resulted in prejudice to the claimant, as required by Shinseki.

Plaintiff next argues that the ALJ's step four determination of Plaintiff's residual functional capacity ("RFC") is not supported by substantial evidence.  Plaintiff's argument, however, pretty much repeats the argument made at step three that the ALJ's explanation "uses an undefined term that makes it difficult to understand."  (Pl.'s Br. at 22.)  Plaintiff did not go

beyond this to point to evidence of record that demonstrates that Plaintiff's RFC is more limited than that determined by the ALJ. Again, Plaintiff has not carried his burden under Shinseki to demonstrate both that the ALJ erred and that the error was harmful.

As to step five, Plaintiff first repeats the step four challenge to the RFC determination, already addressed. Plaintiff then challenges the step five determination on the ground that the RFC limitation to "occasional interaction with supervisors" and "occasional and superficial interaction with coworkers" means that no employment of any kind is possible. Plaintiff's sole support for this point is the contention that it is "obvious." (Pl.'s Br, at 26.) Plaintiff does not dispute that, at the hearing, the ALJ presented the ALJ with an appropriate hypothetical that included these limitations, and that the vocational expert testified that a person with those limitations would be capable of performing certain jobs. The ALJ relied on the testimony of the vocational expert that a person with said limitations can perform the stated jobs. (Tr. 83.) The testimony of the vocational expert constitutes substantial evidence which supports the ALJ's determination at step five.

Plaintiff then repeats this argument in regard to the limitation, "claimant can never perform production pace work." Again, the record of the hearing shows that the expert testified that a person with these limitations, including no production-paced work, could perform three specific jobs. (Tr. 83, 84.) The testimony of the vocational expert constitutes substantial evidence which supports the ALJ's determination at step five. Plaintiff also repeats the argument that the ALJ owed a duty to the *pro se* claimant to cross-examine the vocational expert, which this Court has already rejected.

Plaintiff has failed to persuade this Court that the ALJ erred in the decision, or that he

8

was harmed by any errors.  Plaintiff has not shown that the ALJ erred, has not shown that the evidence supported a decision in his favor, and has made no demonstration of prejudice as required by Shinseki.  This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

     s/ Stanley R. Chesler
   STANLEY R. CHESLER, U.S.D.J.

Dated: April 23, 2025